### WEED v. UNITED STATES.

(District Court, D. Montana. August 2, 1897.)

1. DISTRICT ATTORNEYS—FEES IN MONTANA.

By Rev. St. § 824, district attorneys are allowed $20 in each case tried before a jury. Section 837 provides that "district attorneys and marshals for the district of Oregon and Nevada shall be entitled to receive double fees." Supp. Rev. St. p. 767, § 16, provides that "district attorneys in the state of Idaho shall be allowed the same fees as those allowed in the district of Oregon." And by 26 Stat. 947, and 27 Stat. 223, 714, making appropriations for legislative, executive, and judicial expenses of the government for the fiscal years ending June 30th in the years 1892, 1893, and 1894, it is provided that the marshals, district attorneys, and clerks of the circuit and district courts of the districts of Washington, Montana, and North Dakota shall receive the fees and compensation allowed by law to like officers performing similar duties in the districts of Oregon and Idaho. *Held*, that for each case tried by him before a jury, in the circuit court for the district of Montana during the period affected by the last-named acts, the district attorney was entitled to a fee of $40.

**3. SAME—FEES IN JURY CASES.**

Rev. St. § 824, allowing a specified fee to United States district attorneys for each case "tried before a jury," includes cases which are tried before a jury, although there is a mistrial, and no verdict is rendered.

**3. SAME—CRIMINAL CASES.**

Rev. St. § 824, provides that when an indictment for a crime is tried before a jury, and a conviction had, the district attorney may be allowed a counsel fee in proportion to the importance and difficulty of the case, not exceeding $30. *Held*, that in cases covered by this provision, and also by Rev. St. § 837, Supp. Rev. St. p. 767, § 16, 26 Stat. 947, and 27 Stat. 223, 714, providing for the allowance of "double fees" in certain cases, the court may fix the "counsel fee" at $60.

**4. SAME—FEES FOR EXAMINING LAND TITLES.**

Rev. St. § 355, prohibits the expenditure of money upon any site or land purchased by the United States for the purpose of erecting thereon any public building until the written opinion of the attorney general shall be had in favor of the validity of the title, and requires that the district attorneys of the United States, upon the application of the attorney general, shall furnish any assistance or information in their power in relation to the titles of the public property lying within their respective districts. Section 189 provides that "no head of a department shall employ attorneys or counsel at the expense of the United States, but, when in need of counsel or advice, shall call upon the department of justice, the officers of which shall attend to the same." Supp. Rev. St. p. 18, prohibits compensation or perquisites for court officers of the government beyond salary and statutory compensation, "provided this shall not be construed to prevent the employment and payment by the department of justice of district attorneys as now allowed by law for services not covered by their salaries or fees." *Held*, that a district attorney employed by the attorney general to investigate the title to land authorized to be purchased by the United States, and to make an abstract of the title, is entitled to a reasonable compensation for his services and expenses, over and above his regular salary.

**5. SAME—ACTION FOR FEES—REJECTION BY ACCOUNTING OFFICERS—EVIDENCE.**

In an action by a United States district attorney against the United States to recover the amount of a fee allowed by statute for a certain trial before a jury, the allegations of the complaint that the claim had been disallowed by the proper accounting officer, and that it remained unpaid, are sufficiently established prima facie by proof that the claim had been duly presented, and payment refused; and, if the defendant relies on subsequent allowance and payment, it must prove the same.

Considering the issues presented in this case, I make the following findings:

(1) I find that the plaintiff, Elbert D. Weed, is a resident and a citizen of the state of Montana. (2) That the said Weed, between the 21st day of February, A. D. 1890, and the 21st day of February, 1894, was the duly appointed, qualified, and acting United States district attorney for the district of Montana. (3) That on the 14th, 15th, and 16th day of January, 1892, the said Weed appeared in the circuit court for the district of Montana, and prosecuted the case of the United States against one Fred. Partello before a jury, which jury failed to agree, and was discharged by the said court. Subsequently the United States dismissed said cause. (4) That on the 13th day of May, 1892, the said Weed appeared in the circuit court, district of Montana, and prosecuted the case of the United States against one Amelia D. Barnum before a jury, which jury returned a verdict of not guilty. (5) That on the 16th day of May, 1892, said Weed appeared in the circuit court, district of Montana, and prosecuted the case of the United States against Bernard Leopold before a jury, which returned a verdict of guilty. (6) That on the 18th day of May, 1892, the said Weed appeared in the circuit court, district of Montana, and prosecuted the case of the United States against one Adolph Barnaby before a jury, which returned a verdict of guilty. (7) That on the 19th, 20th, and 21st days of December, 1892, the said Weed appeared in the circuit court, district of Montana, and prose-

cuted the case of the United States against James T. Collins before a jury, which returned a verdict of guilty. (8) That on the 5th day of December, 1892, the said Weed appeared in the circuit court, district of Montana, and prosecuted the case of the United States against one Alfred A. Hasler before a jury, and a verdict of guilty was returned therein. (9) That on the 24th day of February, A. D. 1893, the said Weed appeared in the circuit court, district of Montana, and prosecuted the case of James McGrath before a jury, and a verdict of guilty was returned therein. (10) That, for the services specified in the said case mentioned in the third finding above set forth, said Weed presented an account against the United States to the proper accounting officer thereof, for the sum of $40, and that said account was disallowed. (11) That, for the services in the said case mentioned in the 4th finding above set forth, said Weed presented an account against the United States to the proper accounting officer thereof, for the sum of $40, and said account was disallowed. (12) That for the services mentioned in every one of the cases specified in findings 5, 6, 7, 8, and 9, above set forth, said Weed presented an account against the United States to the proper accounting officer thereof for the sum of $60, and that said accounting officer allowed, in every one of said cases therein mentioned, a fee of $30, and refused to allow the balance of the fee charged in each of said cases, namely, $30. (13) That in every one of said cases specified in said findings 5, 6, 7, 8, and 9 the United States circuit court for the district of Montana, in which all of said cases were prosecuted, allowed said Weed, as an extra counsel fee, the sum of $30. (14) That on the 14th day of February, 1893, the said Weed was employed and directed by the attorney general of the United States to make an examination of the title of certain lands near the city of Helena, Mont., to be deeded to the United States as a site for a military post, and forward to the department of justice at Washington, D. C., a report upon the same, accompanied by a complete abstract of the title thereof; that the said Weed performed said services; that the said services were reasonably worth the sum of $500; that an account for said sum against the United States was presented to the proper accounting officer thereof, and by him disallowed. (15) That the said Weed was employed by the attorney general of the United States on the 9th day of February, 1893, to make an examination of the title to certain lands near the city of Bozeman, Mont., to be deeded to the United States as a site for a fish culture station, and to prepare and forward to the United States a report upon said title, together with an opinion thereon, accompanied by a complete abstract of the title thereto; that said Weed duly performed said services; that the reasonable value of said services was $250.

As to conclusions of law, I find:

(1) That said Weed was, under the laws of the United States, entitled to a fee in each of the cases mentioned in findings 3 and 4, of $40. (2) That the said Weed, in each of the cases specified in findings 5, 6, 7, 8, and 9, was, under the laws of the United States, entitled to a counsel fee of $60. (3) That the said Weed, under the laws of the United States, is entitled to a reasonable compensation for his services mentioned in the finding 14; that such compensation was not covered by any sum provided as a salary for extra services as a district attorney for the United States, and should be allowed over and above any salary earned in fees as such officer. (4) That the said Weed, under the laws of the United States, is entitled to a reasonable compensation for his services mentioned in the finding 15; that such compensation is not covered by any sum provided as a salary for extra services as a district attorney for the United States, and should be allowed over and above any salary earned in fees as such officer.

The reasons that have induced me to make the above findings are set forth in the following opinion:

Elbert D. Weed, in pro. per.

P. H. Leslie and Geo. F. Shelton, for the United States.

KNOWLES, District Judge (after stating the facts as above). Many of the questions presented in this case were considered in rul-

ing upon a demurrer interposed by the United States to the complaint herein. 65 Fed. 399. By virtue of section 824, Rev. St. U. S., district attorneys are allowed $20 in each case tried before a jury. In the act approved March 3, 1891, making appropriations for legislative, executive, and judicial expenses of the government for the fiscal year June 30, 1892, it is provided that the marshals, district attorneys, and clerks of the circuit and district courts of the districts of Washington, Montana, and North Dakota shall receive the fees and compensation allowed by law to like officers performing similar duties in the districts of Oregon and Idaho. See 26 Stat. 947. Similar statutes were passed in 1892 and 1893. See 27 Stat. 223, 714. Section 837, Rev. St., provides "that district attorneys and marshals for the district of Oregon and Nevada shall be entitled to receive double fees." In Supp. Rev. St. p. 767, § 16, it is provided that district attorneys in the state of Idaho shall be allowed the same fees as those allowed in the district of Oregon. I think, therefore, it must be conceded that, during the times the fees specified in this case were earned, the plaintiff, Weed, was entitled to double fees.

The answer denies that plaintiff is entitled to a fee of $40 in the case of the United States against Fred. Partello. The reason assigned for a refusal to pay this fee is that there was a mistrial in the case. It appears from the evidence that Fred. Partello was indicted by a United States grand jury for the crime of rape committed on the Crow Indian reservation. To this indictment he pleaded not guilty. Upon this issue a jury was impaneled; evidence was introduced; the cause argued by the counsel, and submitted to the jury, which failed to agree, and were discharged. Subsequently, owing to the inability of the United States to produce important evidence in the case, it was dismissed, and the defendant discharged. It was claimed that this was not a trial before a jury; that, to constitute such a trial, there should have been a verdict in the case. The question is here presented as to what is meant by the term "a trial before a jury."

In the case of Strafer v. Carr, 6 Fed. 466, it was held that, to constitute a trial before a jury, a verdict must be returned by the jury. In Rap. & L. Law Dict., under the head of "Trial," it is held that a trial by jury includes a verdict. In the case of Hillborn v. U. S., 27 Ct. Cl. 547, it was held that a trial is had before a jury when the cause is submitted to it, although it disagrees. In the case of Van Hoorebeke v. U. S., 46 Fed. 456, Allen, district judge, said:

"Under this statute, the district attorney is entitled to a fee of $20. The disallowance of these items by the accounting officers rests on the fact that there was no verdict in the case, the jury in each case having been discharged by the court after all reasonable efforts to make a verdict had been exhausted. The failure of the juries to make verdicts had nothing to do with the labor of the district attorneys in the preparation and trial of the case; and he is as clearly entitled to a fee when a disagreement of the jury occurs as when a verdict is properly returned to the court."

It should be observed that the language of the statute is "a trial before a jury," and not "a trial by a jury." One of the rules for interpreting a statute is the examination into the object sought thereby. End. Interp. St. The object sought was undoubtedly the providing a district attorney compensation for his labor in preparing a cause

82 F.—27

for trial, as well as in trying the same. It was not to furnish compensation for inducing a jury to return some kind of a verdict in a case. The term "trial before a jury" does not necessarily mean the same as a trial by a jury. Considering the object sought, together with the language of the statute, and I think the case of Van Hoorebeke v. U. S., supra, lays down the correct rule, and that the contention in behalf of the United States cannot be maintained.

In regard to the claim of $40 in the case of the United States against Amelia D. Barnum, the answer denied that the same was disallowed by the proper accounting officer of the national government, or that the same remains unpaid. The proofs presented in court, however, show that this claim was presented to the proper officer, and payment refused. This was sufficient to establish the allegations of the complaint. If, subsequently, this claim was allowed and paid, this fact should have been established by the defendant.

The answer does not dispute the claim for the fees in the Barnard Leopold, Adolph Barnaby, A. Hasler, and James McGrath cases. While it does not fully appear what is the contention of the United States in this matter, I suppose that it would urge the same objection to these fees as was presented in the hearing upon the demurrer in this case, namely, that the plaintiff, Weed, was not entitled to a counsel fee of $60 in each of these cases, but to a fee of but $30. At that time I said in regard to this counsel fee:

"The last clause of section 824, Rev. St., provides: 'When an indictment for the crime is tried before a jury, and a conviction had, the district attorney may be allowed a counsel fee in proportion to the importance and difficulty of the case, not exceeding thirty dollars.' It will be observed that the term used is 'a counsel fee.' In the case of U. S. v. Waters, 133 U. S. 208, 10 Sup. Ct. 249, this allowance is termed 'a counsel fee,' 'a fee,' 'an additional fee.' This fee, it will be observed, is to be fixed and determined as a judicial act by the court. Now, when this fee is fixed by the court, the law above referred to steps in and doubles it. To hold otherwise would be to hold that this allowance cannot be classed as a fee, and hence does not come within the purview of the statute doubling fees of certain federal officers in specified localities, which I have cited above. There is no reason that I can see for doubling the other fees of a district attorney that does not apply to this fee." 65 Fed. 400.

In the main, the language here used I have seen no reason to change. Perhaps I might have stated that the law which doubled the fees gave the court the right to fix $60 as a counsel fee, instead of that of $30. The statute was modified to this extent. It appears that the court in each of these cases allowed, in the account of said Weed, the full fee of $60 claimed; and, as I before stated, this was determined judicially. This determination can be attacked collaterally only by showing there was no law authorizing such an allowance. The law, as I hold it, authorized this allowance, and the sum should be paid.

The next question presented for consideration is that which pertains to the charge of complainant for his services in examining the title to certain valuable lands near the city of Helena, Mont., which it was proposed to deed to the United States for a military post. The allegation in the complaint is that the said Weed was directed and employed by the attorney general of the United States to perform this

work. This is not denied in the answer. Section 355, Rev. St., provides:

"No public money shall be expended upon any site or land purchased by the United States for the purpose of erecting thereon any armory, arsenal, fort, fortification, navy yard, custom house, light house or other public building of any kind whatever until the written opinion of the attorney general shall be had in favor of the validity of the title, nor until the consent of the legislature of the state in which the land or site may be to such purchase has been given. The district attorneys of the United States upon the application of the attorney general shall furnish any assistance or information in their power in relation to the titles of the public property lying within their respective districts. And the secretaries of the departments upon the application of the attorney general shall procure any additional evidence of title which he may deem necessary, and which may be in possession of the officers of the government, and the expense of procuring it shall be paid out of the appropriation made for the contingencies of the departments respectively."

Under the provisions of this section, the district attorneys are to furnish any assistance or information in their power in relation to the titles of the public property lying in their respective districts. In construing the language here used according to its ordinary import, it would not require any services of the district attorneys except in regard to any other than public property. In this case the information desired was in regard to the title to property that it was contemplated would become public property. Considering, however, the object sought by the statute, and it is perhaps true that the information required was sought in just the case here presented. It has been held by four of the attorney generals of the United States that a district attorney was entitled to compensation for the services performed and the expenses incurred in investigating titles to land authorized to be acquired for sites for public buildings in their respective districts. See opinion of Mr. Cushing, 7 Op. Attys. Gen. 46; opinion of U. S. Atty. Gen. Speed, 11 Op. Attys. Gen. 431; and opinion of U. S. Atty. Gen. Browning, 12 Op. Attys. Gen. 416. These opinions were considered by Atty. Gen. Garland in a subsequent case presented to him for determination. See 19 Op. Attys. Gen. 63. In this opinion that officer points out that, before the passage of the act in which section 189 of the Revised Statute occurs, the heads of the several departments were accustomed to employ district attorneys to examine into the titles to lands sought to be purchased by the United States. Under such employment, the district attorneys performing such services received compensation for their services over and above the usual compensation allowed by law for district attorneys. Section 189 is as follows:

"No head of a department shall employ attorneys or counsel at the expense of the United States, but when in need of counsel or advice shall call upon the department of justice, the officers of which shall attend to the same."

Subsequent to the passage of this section, the services named in the complaint have been required of district attorneys by the department of justice. In discussing this point, Atty. Gen. Garland says:

"According to the construction given in practice, that repeal [that is, the repeal of the law authorizing the heads of departments to employ district attorneys for the services named] did not take away the right of a district attorney to compensation when, acting under competent authority, he performs services of the character above mentioned."

The services referred to were the examination of titles to lands sought to be purchased by the national government. The said section 189 does not say that, when district attorneys are required to perform special services for the heads of the departments, they shall not be paid therefor. The attorney general held in his opinion that the provisions of the third section of the act of June 20, 1874, are confirmatory of the above view. See Supp. Rev. St. p. 18. That section reads as follows:

"That no court officer of the government shall hereafter receive any compensation or perquisites directly or indirectly from the treasury or property of the United States beyond his salary or compensation allowed by law: provided, that this shall not be construed to prevent the employment and payment by the department of justice of district attorneys as now allowed by law for services not covered by their salaries or fees."

What services were referred to in this statute as not being covered by the salaries or fees of district attorneys? There are no statutes which particularly described such services. In the opinions of the attorney generals above referred to, such services to some extent are named. In construing the several acts in regard to district attorneys and their compensation, Mr. Cushing, then acting as attorney general, said in his opinion above referred to, when considering said section 355, Rev. St.:

"This act provides no fee for this duty, although it is required of district attorneys to make such examination of titles and abstracts thereof for the information of the attorney general, to enable him to pass on titles, according to the provisions of joint resolution of September 11, 1841. The duty is a delicate and important one, requiring legal science and much care and personal attention. On the whole, it seems to me reasonable to consider the act of 1853 as providing the fees only of the duties enumerated, and that for duties not enumerated he is to have a fee either in the analogy of those fixed by the act, or at the sound discretion of the head of the department ordering the service."

Mr. Browning entertained the same views when considering this subject. Here was a construction made which defined what were the services in one particular which were not covered by any fee allowed district attorneys. Section 771, Rev. St., defined generally the duties of district attorneys. Fees are provided for each one of these duties, but no duty is named which would embrace the examination of titles to lands for the national government. In section 770 it is provided that "for extra services the district attorney of the district of California is entitled to receive a salary of five hundred dollars, and the district attorneys for all other districts at the rate of two hundred dollars per year." This must mean extra services of district attorneys when acting in that capacity. It cannot be supposed that, should the attorney general require of a district attorney duties clearly outside of his official duties, this sum of $200 should cover his compensation. Suppose a district attorney should be called upon to make an argument before an arbitration board or commission upon international questions; would this meager compensation be considered adequate for his services? The act of June 20, 1874, above referred to, was passed subsequent to this section 770, Rev. St. It was evidently contemplated at that time that there were services which a district attorney might be called upon to perform which

were not covered by fees named in the statute or the salary provided for in that section. The opinion of Atty. Gen. Garland was written after the passage of both acts, and his construction of the same would award to plaintiff payment for services in such matters as are here presented, over and above such salary. It is evident that such services are not considered the official services of a district attorney. His opinion upon the question of a title to lands has no official sanction. His opinion is the same as that of any other attorney at law. A construction of a statute by such eminent lawyers as the attorney generals above named, when compelled to act thereunder in their official capacity, is entitled to great weight. It should also be observed that many of the services performed in looking into the title to the premises purchased in this case were such that it would hardly be supposed a district attorney, in his official capacity, would be required to perform. The land to which the title was examined was to be devoted to a military post. From the evidence it appears that an abstract of conveyances affecting the same was made. The plaintiff seems to have examined into the amount of representation work done upon some parts of the ground, which had been located as mining claims. The fact that an appropriation of a water right had been claimed and abandoned is noted. The fact of a forfeiture of certain mining claims for a failure to perform the proper amount of work annually, as required by law, is examined into and reported upon. In some cases it is shown that representation work to the proper amount had been performed upon mining locations. I think it would hardly be claimed that the performance of such services came under the duties of a district attorney. I would also say that considering the provision of section 355, wherein district attorneys are required to furnish any assistance or information in their power to the attorney general, they should be interpreted to mean proper legal assistance or such information as an attorney might possess without exercising great industry and expense in procuring of evidence and abstracts of titles.

In regard to the claim of plaintiff for examining the title to the land purchased at Bozeman, Mont., for a fish culture station, the evidence shows that complainant procured an abstract of the title to the same, visited Bozeman, and examined the land and all matters connected with such title. The right to services in this case would come within the same rule as that expressed in regard to the former claim, above considered.

Reputable attorneys were produced in court, who testified that the services for examining into these titles were reasonably worth what was charged therefor by complainant. I am also satisfied that the charges for examining the titles to land the government was to purchase, as above stated, cannot be used to swell the salary to which district attorneys are entitled to under the statute. These services were special services. They were not services done in an official capacity. Any other attorney not a federal officer could have performed the same. Under such a condition, the person performing such services is "entitled to such compensation as the law implies; that is to say, a reasonable compensation." And this compensation

cannot be regarded as part of a salary any district attorney may be entitled to. Converse v. U. S., 21 How. 463; U. S. v. Brindle, 110 U. S. 693, 4 Sup. Ct. 180. With this view of the case as presented, I find that complainant is entitled to the judgment prayed for in his complaint. It is therefore ordered that the complainant have judgment against the United States for $980.